This is an ineffective mishapious case Your Honor and I am here to persuade you that no competent attorney would have forsaken the available mainstream expert testimony that was left to rot in the field in this case. The rationalization is offered by the courts below primarily by the Supreme Court of Oregon. I'm having trouble with it. Let me tell you what's on my mind so you can educate me. When I used to do personal injury cases often I would consult an expert and then not put the expert on because I got what I wanted out of cross of the other side's expert. Sometimes I'd consult my expert and then not get a report from him so I didn't have to disclose him in discovery. And the reason for all that was that if the jury thought my expert was a liar then my case was dead. If the jury thought the other side's expert was a liar, good chance their case was dead. So putting on an expert was dangerous. In this case the fellow had already put on the experts. He didn't fail to investigate. He did the whole nine yards. He put them on in the second trial and the jury didn't buy it. So in the third trial he desperately tries something else. It's hard for me to see why it's not within a lawyer's possible range of reasonable judgment. Let me explain why Your Honor. A lawyer is supposed to learn something from that prior trial and Mr. Morrow learned the wrong thing. He learned that the jury didn't buy his experts. Those two experts. Those two experts came burdened with terrible flaws. One expert, the child psychology expert. Oh, big deal. So in the next trial you go with new experts and the lawyer on the other side says, were you made aware that there were experts that the lawyer called in the previous trial of this case and not this trial? Just a moment, Judge. These are very serious flaws that led the jury to discredit them. One, now you know as a litigator that an expert whose credentials are falsified loses all his standing in front of the jury. That's what happened with the child psychology witness. He faked his resume. He had articles that were never submitted for publication that he listed as having authored. He had not done any work in the field for years. He had a ridiculously high fee. It made him look like a hired hand of the worst sort. He also made terrible mistakes about the underlying facts of the case, which directly led to his opinion. Any juror is going to disregard that kind of expert. Look at the medical expert. The medical expert had virtually no experience with child sex abuse cases. This was a child sex abuse case. And yet he knew almost nothing about child sex abuse. He hadn't been active in the field. He hadn't read any of the publications that were available to him. He realized that there had been or he'd heard that there had been developments in the field of diagnosing child sex abuse. But he said, I wasn't a part of it. I didn't know anything about it. These were witness-specific flaws. As a matter of fact, you can look at what happened in the second trial as simply Morrow's errors at the first trial. We can't do a habeas on what he did at the first trial because my client's not in custody for what he did in the first trial. But he used two terrible experts, then compounded the error at the next trial by drawing the wrong conclusion from what happened at the second trial. He assumed that because those two witnesses failed, all experts will fail. His failure to investigate, Judge, was failure to seek out two new experts appropriately pedigreed, appropriately prepared in the appropriate field. And where was the first time in state court that you've made that precise argument that you're making us today? His failure was in not seeking out new experts. Correct. And where was the first time you made that argument? In the post-conviction proceedings. Where? I don't have that with me, Judge. Are you raising? Where? I don't have that with me, Judge. It's not in the record excerpts. It's in the... That might explain why I couldn't find it. Where is it? It's, I think it's exhibit C at paragraph B, subdivision 2, subdivision 4. Can you read that for me, please? Petitioner's trial counsel failed to present expert opinion evidence regarding the susceptibility of children of Ell's age. It's on page 27 of our brief, Judge. You want me to continue? And interview techniques, the presence of the many and various such influence of the techniques in this case, and the association of such influence and techniques with highly inaccurate and unreliable reports of sexual abuse. You see, I don't hear that argument as saying the failure was in not getting new experts. It was the failure to get experts. What's the difference? They're the same thing. No, it isn't. I'll let you figure it out, counsel. Go ahead to your next point. I had thought your argument was it was stupid for him not to put on experts in the third trial. That's correct. And the response was, well, he tried it in the second trial and it didn't work. And I really didn't understand until just now that what your argument really was, was not that it was stupid not to use experts. It was that he should have found different experts because the ones he used in the second trial were unusually bad. That's correct. And we would have a different or another, a second ineffectiveness claim had he used the same two experts. We don't expect him to use the same two experts. I've never seen a perfect expert. That's why they're so risky. Well, they are, Judge. I mean, the state used one pretty successfully. I mean, there was no risk there. And your observation before that sometimes counsel wants to not put on his own expert but rest on cross-examining. But there was no cross-examining on the key points because he wasn't prepared to cross-examine on the key points. On a related issue, since this is 2254, we can't reverse unless the state court unreasonably applied Strickland. That means even if we think they erroneously applied Strickland, we can't reverse unless it's beyond the bounds of what reasonable errors they could have made. And I'm having trouble seeing why, if there's a theory on which they could say the lawyer was reasonable, that we can reverse under 2254 standard. Well, we have uncontroverted testimony from the post-conviction hearing from an attorney expert, very experienced in child sex abuse prosecutions, who said and who read the trial, read the testimony of the prior experts, is fully familiar and immersed in the case. And he testified without even an attempt to cross-examine him on that point, that it's simply unacceptable to proceed to trial in a case like this without experts. They're available. They're out there. We're all attorneys ourselves that we can exercise some judgment about whether we buy something like that. We don't have to buy it just because you put on your chute the wounded lawyer and the government doesn't put on its rehabilitate and raise from the dead the wounded. Well, Judge, maybe it would be better to answer your question sort of working a little bit backwards. Are you saying that he should have borrowed the same two experts? Absolutely not saying that. Those two experts were disastrous. He should have gone out and got other experts? Of course. Have you got evidence that they exist? Of course. A lot of them say the same thing that these two experts were saying. Yes, but the problem was that the lawyer – But the jury doesn't believe those kind of experts. Well, the reason the jury didn't believe them, Judge, is because they came with sort of biographical weaknesses. They weren't qualified as good experts. They were immediately disbelieved by the jury. They hadn't worked in the field. One of them falsified his credentials. I mean, an expert is only going to be believed by the jury if he seems to have the appropriate credentials. The child psychology expert didn't have them. What's more, he made critical mistakes of fact in his review of the case, and that critical mistake of fact he admitted was the basis of his opinion. This was an unprepared expert with a bad pedigree who had falsified his resume. That's why the jury rejected him. What jury wouldn't reject a witness like that? The second, the medical expert at the first trial, had no experience in the field. Why would a jury listen to him? But there are other witnesses who could have conveyed the science. I don't know if you would need experience in the field. It seems like what you need is an expert who says, I do OB-GYN. The girl would not have an intact timing if he'd raped her, as he says. But we didn't even have that expert. And what's more, there was some basically uncorrected and misleading testimony by the state's expert that should have been corrected. It wasn't corrected on cross. It wasn't even challenged on cross. But it could have been corrected with an expert witness who would have corrected this. You know, you had ambiguous medical symptoms, highly dubious surroundings of this case. You know, all these charges supposedly took place, and ultimately the third trial started out with three accusations for the indictment. It ended up to be dozens by the time of this last trial. All these incidents took place in the presence of two other children with two other adults in the same house. They weren't reported until years later, and only after ceaseless prompting. And yet all of these sexual events resulted only in ambiguous physical findings, very ambiguous physical findings, nonspecific physical findings. Now, that was a very important flaw in the people in the state's case. And how did the state rationalize it away? They had their medical experts say, well, that's nothing unusual. Half of all confirmed cases of child sexual abuse are symptom-free. Well, that happened to be just wrong, dead wrong. Only one in seven are symptom-free. Thank you, counsel. Your time has expired. We'll hear from the other side. Excuse me? We'll hear from the other side. May it please the Court, Tim Sylvester for the respondent in this case. The problem with the experts the first time around wasn't with their pedigree or their biography or anything like that. Please keep your voice up. I can't hear you. I'm sorry. The problem with the Mr. Morrow concluded that the problem with the expert that he used in the second trial was not necessarily their pedigree or their experience or anything of that nature, because when you look at their qualifications, they were qualified to testify as experts. The problem was is they couldn't provide any testimony that tied in with the facts of this case. Now, Mr. Morrow had the opportunity to watch the state's experts the first time around, and the victim in this case, who was an eight-year-old girl, testified under oath at great length at both the second trial and ultimately at the third trial. So he was aware that trying to put on a case arguing that this child had been coached and intimidated and coerced simply wouldn't fly on the facts. And so the expert that he was trying to, the second, the expert that he was using, the second trial, came in to testify that children are suggestible, they're susceptible to this sort of thing, et cetera, et cetera. But the fact is is that that expert couldn't connect up that general opinion with the particular facts of this case. Doesn't that suggest he had the wrong experts? No, I think that he had the wrong facts is the problem. Ultimately, the problem in this case for the defendant is the facts. No, the facts aren't that bad. The girl says he raped her, and there are all kinds of sex abuse where you won't penetrate the hymen, but that one you penetrate the hymen. The other problem that's wrong is it looks like the parents are getting a divorce and a mother brings a girl into this counselor who has her play with the anatomically correct dolls. The motivation of the mother and the possibility of suggestive coercion are kind of obvious there. No, I would disagree with you, Your Honor, because it's very important to point out that there was never any suggestion in this case that the mother had any motivation, any motivation in this case to falsely accuse the defendant, petitioner. There's no evidence in this case that the child had any motivation. This was an amicable divorce. They were, they had joint custody, joint visitation. There was never any dispute about the visitation. There was never any problem like that. The mother took the child in for observation because the child was having behavioral problems that were not specific to any sort of sexual abuse. So let me go back then to where I was a few minutes ago. If I remember the record correctly, a juror communicated to the lawyer and told the lawyer that the experts had fallen apart. That's correct. We don't believe these experts and maybe indicated why, but I didn't see anywhere in the record where the communication had something to do with the facts. It sounded to me as though the juror said the lawyers, rather the experts were no good and they didn't help you. And so that's why I'm wondering, wasn't this a case of this lawyer choosing the wrong experts? And isn't that also the case then that the other side has a point that once he's told by the jury that these experts stink, did not he have a responsibility to go out and find someone that in the vernacular don't stink? Well, the problem was not that the lawyers stunk. The experts. I mean, that's what I meant. Excuse me. Understandable slip of the tongue. I guess it's not specifically put out what they said in the affidavit, which is an excerpt of record 76. The information wasn't that the facts blew away your your experts. The information was your experts fell apart. Well, the experts fell apart because his opinion could not be connected up with the facts of the case. That was the problem. I don't recall that that was at all significant. If, in fact, the record shows that you don't recall that that was all significant. Did it happen? There may have been some discrepancy about his resume, but I don't think that there was any significant accusation of him having falsified his credentials or that he was not competent to testify. His affidavit says affidavit of Ken Morrow, which is on page 70, the record 76. One expert, Mr. Boberman, stated in testimony that his opinion based on facts. It's kind of hard to read. But what are you reading from? It's an excerpt of record page 76. And my point is, we're always given excerpts that are impossible to read. Well, the problem was, is that it's an affidavit and he scritched out what was what was typed in and he put in the handwriting. And I'm right now having a difficulty reading his handwriting. But my recollection was, is that the problem was, is that he testified. Mr. Boberman testified at length about children's susceptibility to suggestion and that sort of thing, which is not really in dispute. The problem was, is that he had come to a conclusion that the child was coached based on a misunderstanding of what the actual facts were. And he had testified that he and the prosecutor said, in fact, there is no testimony here that anybody had repeatedly questioned her for two years about this. And whom do we assign the responsibility for that failure? The lawyer or the expert? Well, I think it was a little bit of both, because evidently the expert had misunderstood the facts. And so the lawyer misled the expert and the expert crashed. Well, it could well have been that the expert misunderstood the facts through no fault of the defense counsel. The point is, though, is that that particular claim is not part of this case. The petitioner never has claimed that Mr. Morrow provided constitutionally inadequate assistance at the second trial for using these experts. The question, rather, is, is should he have, when he went back through it the third time, and I want to make one point in particular, and that is, is that the first trial was done by a different lawyer, the second trial was done by Mr. Morrow, the third trial was done by Mr. Morrow. Mr. Morrow said, you know, I gave it a shot. The problem was is that these experts, the problem was is that the expert opinion that he was trying to get in couldn't be meshed with the facts in this case, because there was no suggestion of motive, there was no question of suggestion of coaching or anything of that nature. This child very reluctantly disclosed the abuse, which was that her father, whom she idealized, had been forcibly raping her. And, yes, that's a hard thing for a child of eight to five and six. I don't really see where that helps. I mean, when a child reluctantly discloses sexual abuse, one possibility is that the child is very uncomfortable about it and is reluctant to disclose it. Another is it never happened, but if a counselor just keeps playing with the suggestive dolls and flooding the child with talk about sex, eventually the child will give the counselor what the child figures out the counselor wants. But there's nothing, there's no evidence to this record that this was at all suggested to the child. So what I hear you saying is there are really no experts around that had much to offer given this scenario. That's correct. I mean, you can read through the 37-page declaration, and it sounds all very good, but the fact is that trying to tie it into the actual facts of this case is very difficult, because there is nothing to suggest, really, that these people, the problem, for example, with the anatomically correct dolls is those were put out, there was nothing suggested to this child about that, and what she does is she pulls the pants off the male doll and tries to bite its penis off. And the counselor said, that seemed a little unusual to me. And she was saying, I want to bite my father's penis off. And so you have that sort of thing that suggests to the counselor that there may be some underlying hostility that is prompting the child to be acting out. And so it was a very patient, very methodical stepping through the process, and eventually the child did disclose. And the child then, who was eight years old, got on the stand at trial and testified. There are minor inconsistencies in her testimony, to be sure, given the age of the child, but she testified under withering cross-examination by Mr. Morrow, and she stuck to her story. Let me get to the point. Why shouldn't he have gone to the third trial with better experts? Because he already tried it with the second. And the point I tried to make in my brief is this. This is a 2254 case, and the question is, did the state courts apply clearly established federal law contrary by decisions of the United States Supreme Court? And I'm not aware, as I put in my response brief, I'm not aware of any decision by that court or by this court that puts any obligation on a defense counsel, having once consulted with experts, to go beyond and to get additional experts. This court never has suggested that that is a constitutionally required thing for a counsel to do under a Strickland standard. And, in fact, as I put in my brief, there are many cases in which this court, for example, the Wildman case that I cite from this court, that said, having once consulted with competent experts in this area, the counsel did not have an obligation to do further research into other experts. The problem with that quote that you, David, just gave us is that having once consulted with competent experts, and I think that assumes the answer to the question in this case. Well, I would agree. Your time, too, has expired. Thank you, counsel. We'll allow you to respond. Thank you, Your Honor. You just responded to, I'm crossing out my first entry here because you just answered what I was going to do. The state just made a big point out of this, anatomical dogs. Seized on a very important part, it was a very dramatic moment in the trial. Many, many pages devoted to the description of all this apparently sexualized play with the anatomical dogs. Highly suggestive to a lay jury. Precisely what an expert could have countermanded, because that has utterly no diagnostic value of sex abuse, whatever. That's right in the Bruck report. She cites several articles that confirm that. That would have taken one of the most dramatic moments out of the case, counted it completely. Mr. Morrow didn't even cross-examine on that, didn't even ask her about it, the state's expert. Second thing, as to the medical expert, the medical expert also, 40 or so pages, describing in detail her gynecological examination, larded with all kinds of medical jargon, rolls and dips and notches and hymenal ridges and four sheds. It was all smoke and mirrors. A medical expert could have told the jury that these descriptions were not diagnostic of sexual abuse. They meant nothing. Let me ask you one question. Counsel says the real problem that you're facing is that the standard review requires an off-the-wall decision by the Oregon Supreme Court in this case that contravenes clearly established federal constitutional law as articulated not by the Ninth Circuit but by the United States Supreme Court. He says nowhere will we find any place where at that level we've had instructions that once having consulted experts, if it doesn't work, you must consult others. Your answer to that is what? My answer to that is this. It's not a question of whether you consult experts. It's a question of what you do at the retrial. And there's a wonderful case out of the Sixth Circuit that describes and I know that's not binding, but that describes what's incumbent upon a lawyer when he essentially tries the same issue twice on the same case. Skaggs v. Parker, Sixth Circuit case. Congress told us stay out of the Sixth Circuit, stay out of the Ninth Circuit, stay out of the Eighth, go to the Supreme Court. Yeah, but the Supreme Court also, this court has noted any number of times that it is the Supreme Court cases that are primary as amplified and enlightened by rulings of this circuit. You can look to other Ninth Circuit cases for insights on how to construe and apply Supreme Court doctrine. I've always thought that was very iffy. Why don't you just give us the Sixth Circuit case like it was a bar review. Very briefly, very, very briefly. Here's what happens in the Sixth Circuit case. Capital case, insanity defense at the guilt phase. Defense puts on an expert who turns out to be baddie, even baddier than the two in this case. The circuit court describes him as comical and incompetent. Conviction, penalty phase. Trial lawyer, what does he do? He doesn't learn from what happened at the prior proceeding. He puts on the same expert at the penalty phase. That is incompetent, and it's no good to look back and say, well, he saw what happened at the first trial. Anything he does at the penalty phase is tactical, and therefore we can't look at it. Sixth Circuit didn't buy that. You have to learn from what happened at the first trial. And Mr. Morrow had to learn from what happened at his first trial here. And that was that the flaws in the experts were witness specific, not science specific. The great science that could have been carted into the courtroom to the jury was still out there. All you needed was a sound conduit to carry it into the jury. And with that, I'll rest. Thank you. Go ahead. Thank you. Thank you.
judges: Ferguson, Trott, Kleinfeld